UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMANDA T.,

Plaintiff,

v. CASE NO: 1:21-cv-00817 (JGW)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC
Counsel for Plaintiff
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226

MARY ELLEN GILL, ESQ.
KENNETH R. HILLER, ESQ.

U.S. SOCIAL SECURITY ADMIN.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

ARIELLA R. ZOLTAN, ESQ.

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is DENIED, the defendant's motion for judgment

on the administrative record is GRANTED, and the decision of the Commissioner is AFFIRMED.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 3, 1973, and has at least a high school education. (Tr. 396, 401). Generally, plaintiff's alleged disability consists of fibromyalgia, neck/back/shoulder problems, depression, migraines, and hypothyroidism. (Tr. 400). Her alleged disability onset date is May 18, 2015. (Tr. 396). Her date last insured was June 30, 2018. (Tr. 136).

### B. Procedural History

On January 11, 2017, plaintiff applied for a period of Disability Insurance Benefits (DIB) under Title II of the Social Security Act. (Tr. 115). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On May 21, 2019, plaintiff appeared before ALJ Timothy McGuan. (Tr. 75). On June 3, 2019, ALJ McGuan issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 112-28). On June 30, 2020, the Appeals Council (AC) granted plaintiff's request for review and remanded the case back to the ALJ. (Tr. 134-38). On November 17, 2020, another hearing was held before ALJ McGuan. (Tr. 37). On December 1, 2020, ALJ McGuan issued an unfavorable decision. (Tr. 12-30). Plaintiff proceeded directly to this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged disability onset date of May 18, 2015 through her date last insured of June 30, 2018 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, migraine headaches, and major depressive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), because she was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant required a sit-stand option after sixty minutes, but she was able to remain at the workstation and stay on-task during position changes. The claimant was able to frequently finger and handle bilaterally. In addition, the claimant was able to perform simple, unskilled work of a routine and repetitive nature.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 3, 1973, and she was 44 years old, which is defined as a younger individual, age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant’s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 18, 2015, the alleged onset date, through June 30, 2018, the date last insured (20 CFR 404.1520(g)).

(Tr. 12-30).

## II. THE PARTIES' BRIEFINGS

### A. Plaintiff's Arguments

Plaintiff makes essentially two separate arguments in support of her motion for judgment on the pleadings. First, plaintiff argues the ALJ did not properly apply the treating physician rule to Dr. Kowalski's opinion and incorrectly considered her fibromyalgia in the analysis. Second, plaintiff asserts the sit/stand option in the RFC is not supported by substantial evidence. (Dkt. No. 5 [Pl.'s Mem. of Law].)

### B. Defendant's Arguments

Defendant responded to each argument. First, defendant argues that the ALJ properly considered the record as a whole when weighing Dr. Kowalski's opinion, particularly as related to limitations from her fibromyalgia. Second, defendant contends the RFC limitation for alternating between sitting and standing every 60 minutes is supported by substantial evidence. (Dkt. No. 9 at 3 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Treating Physician Opinion

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not properly consider a highly restrictive opinion provided by one of her primary care providers, Dr. David Kowalski. Plaintiff specifically argues that the ALJ ignored her diagnosis of fibromyalgia and improperly relied on mostly normal clinical findings to discredit Dr. Kowalski's opinion. (Dkt. No. 5 at 7). These arguments are without merit. Notably, plaintiff's arguments only challenge the physical RFC finding and not the mental RFC finding. (Dkt. No. 5)

Because plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to

controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he must consider various factors to determine how much weight to give to the opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must give good reasons in his decision for the weight he assigns. 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons" ' for the weight given to a treating source opinion." (*quoting Halloran*, 362 F.3d at 32)). Those good reasons must be supported by the evidence in the case record and must be sufficiently specific. *Harris,* 149 F. Supp. 3d at 441 (internal quotation marks omitted). As discussed below in more detail, ALJ McGuan meticulously referenced the extensive medical opinion evidence and permissibly declined to give controlling or great weight to the opinions from plaintiff's treating physician Dr. Kowalski for good reasons.

Approximately one year after plaintiff's date last insured, Dr. Kowalski provided a letter dated May 20, 2019, in which he opined that plaintiff was "totally disabled" due to depression, migraines, and fibromyalgia. (Tr. 700). On July 29, 2020, Dr. Kowalski completed a form declaring that plaintiff could sit for less than two hours and stand/walk for less than two hours in an eight-hour workday; required the ability to shift positions at will; required the ability to elevate her legs for four-to-six hours in an eight-hour workday;

could occasionally carry less than 10 pounds, rarely carry 10 pounds, and never carry more than 20 pounds; could occasionally move her neck and perform postural activities such as twisting, stooping, crouching, squatting, and climbing; and could only perform fingering and handling for 25 percent of the workday. (Tr. 721-24).

In accordance with the relevant regulations, while ALJ McGuan noted the treating relationship, he also provided several reasons for assigning only minimal weight to the opinions. (Tr. 27). To begin, the 2019 statement was not a medical opinion under the regulations as it is an opinion on an issue reserved to the Commissioner and not entitled to any special significance. 20 C.F.R. § 404.1527(d)(1)-(3). The ALJ then aptly explained that the extreme limitations from the 2020 opinion were not well-supported by acceptable clinical and laboratory diagnostic techniques, nor consistent with other substantial evidence and therefore not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2).

The ALJ appropriately considered the various factors under the treating physician rule and provided sufficient explanation to follow his rationale for not giving the opinion greater weight. As highlighted by ALJ McGuan, Dr. Kowalski's opinion was inconsistent with plaintiff's conservative treatment history, clinical findings and reported activities of daily living. (Tr. 27). Indeed, plaintiff reported being able to cook, clean, shop and perform childcare, which the ALJ discussed earlier in the decision. (Tr. 25, 27, 629). *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ determined that Plaintiff's "numerous daily tasks, such as walking her dogs and cleaning her house, [were] consistent with a residual capacity to perform light work"); *Poupore,* 566 F.3d at 307 (ALJ correctly noted that the plaintiff was able to perform childcare and various household chores, and drive, in support of an RFC for light work). In his analysis, the ALJ reiterates the record medical

evidence of unremarkable findings, particularly normal musculoskeletal and neurological examinations. (Tr. 23-24, 27).

Permissibly, the ALJ considered plaintiff's conservative treatment, which consisted of massage therapy, chiropractic manipulations, and a non-steroidal anti-inflammatory drug for headaches, in finding the extreme limitations inconsistent with the record as a whole. (Tr. 27). *See Netter. v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (An ALJ may consider a claimant's conservative treatment as additional evidence supporting the ALJ's determination). Notably, plaintiff only saw her primary care providers approximately six times during the relevant three year period. (Tr. 538, 541, 543, 641, 650, 653). Moreover, plaintiff only consulted twice with her neurologist and twice with her endocrinologist during the relevant period. (Tr. 558, 564, 603, 606). There is no evidence in the record that plaintiff followed up with her neurologist after July 2016 despite alleging disabling headaches throughout the entire relevant period. *See Navan v. Astrue*, 303 F. App's 18, 20 (2d Cir. 2008) (a claimant's allegations of disability are undermined by a failure to seek regular treatment for the allegedly disabling conditions).

Plaintiff's argument omits discussing the ALJ's analysis and weighing of other opinions in the record, which were inconsistent with Dr. Kowalski's opinion and constitute substantial evidence to support the RFC. On March 21, 2017, Dr. Hongbiao Liu performed a consulting internal medicine examination at the request of the state agency and opined that the plaintiff had mild limitations for prolonged walking, bending, and kneeling, and should avoid dust and other irritating factors. (Tr. 631). The ALJ accorded significant weight to the portion of the opinion for prolonged walking but explained that the other limitations were not supported by Dr. Liu's exam findings nor consistent with the record.

(Tr. 26). For example, upon examination Dr. Liu found full range of motion in the cervical spine and extremities, negative straight leg raising test, stable and nontender joints, normal reflexes, full motor strength, intact sensation, full grip strength, intact finger dexterity, and no evidence of muscle atrophy. (Tr. 629-30; *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion . . . the more weight we will give to that medical opinion."). Moreover, the ALJ noted that Dr. Liu's opinion was generally consistent with findings throughout the record of normal gait, full ranges of motion, full strength, intact sensation, and normal reflexes in all four extremities. (Tr. 25 *referring to, e.g.*, Tr. 507, 559, 604, 607, 642, 654-55; *see* 20 C.F.R § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Plaintiff does not assert any error in the ALJ's consideration of this opinion and Dr. Liu did not establish any limitations for lifting, carrying, standing, sitting, climbing, reaching, handling, fingering or feeling. (Tr. 631).

The RFC was also supported by the April 10, 2017, opinion of state agency review physician Dr. R. Dickerson. (Tr. 108-09).  Dr. Dickerson opinioned that plaintiff was able to occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, stand and/or walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. (Tr. 26 *referring to* Tr. 107). The ALJ found the statement well supported because Dr. Dickerson based his opinion on a review of the longitudinal treatment record, including Dr. Liu's findings and medical records from treating sources. (Tr. 26; see 20 C.F.R. § 404.1527(c)(3)).

It was not only permissible but also the ALJ's duty to resolve genuine conflicts in the evidence which arose from the divergent opinions. *See Patrick R. v. Commissioner of Social Security*, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]t has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence"); *Schillo v. Kijakazi*, 31 F.4th at 78 (2d Cir. 2017)(rejecting the argument that "having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was ... prohibited from making an RFC finding whatsoever").

Pertaining specifically to the diagnosis of fibromyalgia and related limitations, the ALJ's analysis was sufficient and well-supported. Contrary to plaintiff's argument that fibromyalgia is based on subjective reports, Social Security Ruling (SSR) 12-2p requires that a claimant demonstrate objective evidence of specific clinical findings associated with fibromyalgia under established medical guidelines. *See* 2012 WL 3104869, at *3 (2012). This ruling specifically directs the ALJ to consider all relevant evidence in the longitudinal record, including objective evidence, opinion evidence, statements about symptoms, course of treatment, and daily activities. *See* 2012 WL 3104869, at **5-6 (2012). Here, both Drs. Liu and Dickerson considered plaintiff's fibromyalgia and related limitations. Dr. Liu opined that even with fibromyalgia, plaintiff had only mild limitations for prolonged walking, bending, and kneeling. (Tr. 631). Similarly, Dr. Dickerson explicitly considered plaintiff's fibromyalgia symptoms and Dr. Liu's finding of trigger points before opining that plaintiff was capable of performing light work. (Tr. 107-09).

Defendant's response pointedly identifies case law holding that an ALJ did not err in declining to assign controlling weight to a treating source opinion in the context of a

fibromyalgia case because the ALJ found that the medical opinion was inconsistent with other medical opinions. *Darnise C. v. Comm'r of Soc. Sec*., 2022 WL 896762, at *12-13 (W.D.N.Y. Mar. 28, 2022); *see also Harrison v. Commissioner,* 2020 WL 607623, at *3 (W.D.N.Y. Feb. 7, 2020). Here, the ALJ did precisely the same and remand is not warranted.

**B. Sit/Stand Option**

In a related argument, plaintiff asserts that the ALJ erred by including a sit/stand option that allowed her to change position every 60 minutes, instead of adopting Dr. Kowalski's more extreme limitation of allowing her to change positions at will. (Dkt. No. 5 at 10). As thoroughly discussed above, the ALJ appropriately considered Dr. Kowalski's opinion, which includes the at will postural limitation, and provided good reasons for according it minimal weight. Furthermore, plaintiff's argument that she needed to change position at will is not supported by any other evidence in the record nor has she proven she is unable to perform the RFC. (Dkt. No. 5 at 10-11). *See Valentin v. Comm'r of Soc. Sec*., 820 F. App'x 71, 73 (2d Cir. 2020) ("Valentin does not identify any evidence supporting a more limited RFC.").

For sure, specific limitations included in an RFC, like the RFC as a whole, "must be based on evidence in the record, not on an ALJ's own surmise." *Wouters v. Comm'r of Soc. Sec*., No. 19-CV-610, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020). Thus, where an ALJ includes a highly specific durational limitation, he must have an evidentiary basis for the chosen duration. A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given duration. Furthermore, an ALJ is not limited to adopting only those durational limitations explicitly

identified in the record but he is free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations. *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019) ("[W]hen the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation."). Unless a reasonable factfinder would have to conclude otherwise, the district court must defer to the ALJ's factfinding. *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Here, ALJ McGuan supported the sit/stand finding with evidence from the record. The ALJ considered plaintiff's complaints of fibromyalgia, migraine headaches, and neck and back pain, and specifically acknowledged plaintiff's testimony that the combination of chronic pain and fatigue rendered her unable to perform sustained work activity. (Tr. 22 referring to Tr. 43-44). In the decision, the ALJ reiterated the numerous examinations that were without objective clinical abnormalities but acknowledged plaintiff's complaints of general pain. (Tr. 23-24). And while not adopting the position changes opined by Dr. Kowalski, the ALJ reiterated that such opined limitations were carefully considered in balance with the medical evidence when devising the residual functional capacity. (Tr. 27).

Additional evidence from the record supports the ALJ's sit/stand limitation. On her function report, completed as part of her application for benefits, plaintiff reported that she could sit for an hour or two at a time. (Tr. 415). Dr. Liu opined that plaintiff had a mild limitation for prolonged walking. (Tr. 631). At the hearing, plaintiff testified that despite her pain, she was able to take some short trips over the past years, including a seven-hour

car ride to visit family with use of pain medication prior and a heating pad after. (Tr. 58). Lastly, she testified that it was sitting and standing "for a long period of time" that would increase her pain. (Tr. 59).

As permitted, the ALJ reasonably reduced the RFC for postural activities to a more specific amount in order to properly convey plaintiff's limitation and give the vocational expert sufficient information to determine whether plaintiff could obtain work in the national economy. (Tr. 67-68). *See Michelle D. v. Comm'r of Soc. Sec.*, 2024 WL 108685, at *5 (W.D.N.Y. Jan. 10, 2024).

In sum, ALJ McGuan explained his reasoning in the analysis portion of the decision concerning plaintiff's physical RFC. The plaintiff has not satisfied her duty of proving that her RFC is more restricted than that found by the ALJ. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**.

Dated: March 25, 2024
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge